IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

ALISONE DAWKINS,                          :
    Plaintiff,                           :
                                         :
v.                                        :          **CIVIL ACTION NO. 25-CV-7324**
                                         :
QUADRATEC,                                :
    Defendant.                           :

## MEMORANDUM

**SÁNCHEZ, J.**                                    **FEBRUARY 23, 2026**

Plaintiff Alisone Dawkins commenced this *pro se* civil action alleging claims of

employment discrimination.  Dawkins seeks to proceed *in forma pauperis* and has requested

appointment of counsel.  For the following reasons, the Court will grant Dawkins *in forma*

*pauperis* status, dismiss the Complaint without prejudice, and deny the request for appointment

of counsel at this time.  She will be granted leave to file an amended complaint if she can cure

the deficiencies noted by the Court.

## I.    FACTUAL ALLEGATIONS[1]

By checking the appropriate locations on the Complaint form, Dawkins indicates that she

is bringing claims of race discrimination under Title VII of the Civil Rights Act of 1964.

(Compl. at 1, 3.)  She lists Quadratec as the Defendant and indicates on the form that

Quadratec's alleged discriminatory conduct began on or about December 27, 2023.  (*Id*. at 2-3.)

---

[1] The factual allegations are taken from Dawkins's Complaint ("Compl."), which consists of the Court's form complaint for alleging employment discrimination claims available to unrepresented litigants and emails attached to her Complaint. (ECF No. 2.)  The Court considers the entire submission to constitute the Complaint and adopts the sequential pagination assigned by the CM/ECF docketing system.  Where the Court quotes from the Complaint, punctuation, spelling, and capitalization errors will be cleaned up as needed.

She checked the following as the discriminatory conduct of which she complains – "Termination of my employment," "Failure to stop harassment," "Unequal terms and conditions of my employment," "Retaliation," and "Other," citing harassment. (*Id*.) She further indicates on the form that she filed a charge with the Equal Employment Opportunity Commission ("EEOC"), and the EEOC issue a Notice of Right to Sue Letter, which she received on September 25, 2025.[2] (*Id*. at 4.) She did not include any factual allegations in the area provided on the form, but she attached additional details in what appears to be an email she sent to an EEOC Investigator. (*Id*. at 3, 7-12.)

In the attachment, Dawkins alleges she was initially hired as a temporary worker, presumably with Quadratec. (*Id*. at 7, 12 (referencing Quadratec).) At some point, she was observed by the manager of the warehouse, Francis Kessler ("Frank") for two weeks until she "was approached by the supervisor Jay, as well as Clifford Senior Clarke." (*Id*.) They informed her that Frank stated she "was doing an amazing job and the company wanted to know if [she] would like to join the team permanently." (*Id*.) She accepted the position, then references that an individual identified as "Mrs. Dusty Tamburri" ("Dusty") was hired a year later. (*Id*.) Although the subsequent events described are hard to follow and heavily focus on her "remarkable" work ethic and compliments she received regarding her job performance, the crux of Dawkins's email to the investigator relate to an email her husband sent on December 22, 2023, presumably to someone at Quadratec, regarding concerns she had expressed to him about the conditions and cleanliness at the warehouse. (*Id*. at 7-8.) She claims after her husband sent the email regarding her "complaints and concerns," Dusty purchased several cleaning products and adjusted the

---

[2] Dawkins separately filed a copy of the right to sue letter from the EEOC. (ECF No. 6.)

temperature in the warehouse. (*Id.* at 8.) She alleges "shortly after that the racial discrimination, harassment, and retaliation began against [her]." (*Id.*) She "returned back to work after being sick on December 27, 2023," and Dusty told her "to go find another desk on the other side of the warehouse," but informed her "it wasn't because [she] was being punished" and "that's when the harassment began." (*Id.*) She describes an incident with Dusty rearranging and overfilling her cart that occurred on January 4, 2024, that resulted in a meeting between her, Dusty, and Frank where she asked Dusty to not touch her cart. (*Id.*) Dawkins also told Dusty and Frank that she felt like they were mad at her, and she was "getting backlash" from the email her husband sent. (*Id.*) They did not respond to her and changed the subject. (*Id.*) On January 8, 2024, Dusty overfilled her cart again and Dawkins complained, which resulted in a meeting with Ted Wentz, Senior, presumably a supervisor, a couple days later. (*Id.* at 9-10.) At the meeting, Dawkins informed him about the email that her husband sent and the issues with Dusty. (*Id.* at 9.) He told Dawkins that "he would have a conversation" with Frank and Dusty, and she believed "this situation" was resolved. (*Id.*) However, the following month, she received a negative progress report that ultimately resulted in a performance improvement plan ("PIP") based on untrue allegations that she "was being combative with supervisor Clifford Clarke Sr. and Dusty." (*Id.*) She refused to sign the PIP because she claims she had not done anything wrong and told Frank, "this is nothing but retaliation from the email my husband sent." (*Id.*) Clarke Senior was asked about the situation and allegedly said that he never told Frank or Dusty that Dawkins was combative with him. (*Id.*) After the meeting, Dusty confronted her to ask if she was okay, and Dawkins explained she felt harassed and was getting written up for things that she never did. (*Id.*) They talked about the situation, and "Dusty ripped up the original PIP" and told Dawkins she would rewrite it. (*Id.* at 9-10.) Frank presented her with another progress report and PIP on

3

February 22, 2024, which she again refused to sign and claimed "they" were harassing her. (*Id.* at 10.)

Dawkins next asserts that on February 27, 2024, a co-worker delivered more boxes to her station based on Dusty's direction and mentioned that he could tell Dusty did not like her, but there was nothing she could do since Dusty was a manager. (*Id.*) A couple days later, Dusty again put more items on her cart and Dawkins "politely asked Dusty" to give the additional items to co-workers since she had two full carts. (*Id.*) Dusty responded, "I don't give a shit if you do it or not" and then told Frank that Dawkins yelled at her. (*Id.*) Dawkins pleaded with Frank to tell her side of the story, but he would not listen and told her to go back to her desk. (*Id.* at 10-11.) Dawkins complied and went back to work on her cart when it started to move suddenly. (*Id.* at 11.) She then saw Dusty moving her cart and Dusty told her to go home. (*Id.*) Dusty then said she would tell Dawkins "if" she could come back. (*Id.*) Dawkins told Dusty that she was calling EEOC because she didn't "like the way [Dusty was] treating" her. (*Id.*) She tried to talk to Frank before she left, but he said, "not now." (*Id.*)

Ted Wentz, Junior, the CEO and "acting HR" of Quadratec, called Dawkins on March 7, 2024, and told her that he heard she "was going to the EEOC" and wanted to know what evidence she had. She told him she had "substantial evidence." (*Id.*) Wentz subsequently fired her on March 10, 2024. (*Id.*) Wentz told her, presumably when he fired her, that her performance in January and February 2024 "failed" and did not "meet the minimum requirement standard and needed improvement." (*Id.*) Dawkins also mentions issues used against her related to using her cell phone and how she used her paid time off and vacation time. *(Id.* at 11-12.) She alleges Wentz was not present for any of these incidents and "went by what Dusty told him." (*Id.* at 11.) She further claims Wentz "stated he interviewed five employees who are all of no

4

color, but there was a color employee there," who was not interviewed.  (*Id*.)  She claims

Quadratec denied her "of unemployment on the grounds of subordination and violation of

employer's cell phone policy."  (*Id*. at 12.)  It appears Dawkins filed for unemployment

compensation after her termination because she references the decision in an unemployment

appeal, claiming the referee found that Quadratec "presented no competent evidence of

insubordination" or violations of its cellphone policy.  (*Id*.)  She asserts the disqualifying

separation determination was reversed on May 14, 2024, and she won her unemployment

benefits case.  (*Id.*)  As a result of these events, she seeks, *inter alia*, unspecified injunctive

relief, lost wages, and monetary damages.  (*Id.* at 5.)

## II.    STANDARD OF REVIEW

The Court grants Dawkins leave to proceed *in forma pauperis* because it appears that she

is incapable of paying the fees to commence this civil action.  Accordingly, 28 U.S.C.

§ 1915(e)(2)(B)(ii) requires the Court to dismiss the Complaint if it fails to state a claim.

Whether a complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed by the same

standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), *see*

*Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999), which requires the Court to

determine whether the complaint contains "sufficient factual matter, accepted as true, to state a

claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)

(quotations omitted); *Talley v. Wetzel*, 15 F.4th 275, 286 n.7 (3d Cir. 2021).  "[T]he plausibility

paradigm announced in [*Bell Atl. Corp. v.*] *Twombly*[, 550 U.S. 544 (2007),] applies with equal

force to analyzing the adequacy of claims of employment discrimination."  *Fowler v. UPMC*

*Shadyside*, 578 F.3d 203, 211 (3d Cir. 2009) (quotations omitted).  At this early stage of the

litigation, the Court will accept the facts alleged in the *pro se* complaint as true, draw all

5

reasonable inferences in the plaintiff's favor, and ask only whether the complaint contains facts sufficient to state a plausible claim. *See Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021), *abrogation on other grounds recognized by Fisher v. Hollingsworth*, 115 F.4th 197 (3d Cir. 2024). Conclusory allegations do not suffice. *Iqbal*, 556 U.S. at 678. As Dawkins is proceeding *pro se*, the Court construes her allegations liberally. *Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021) (citing *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244-45 (3d Cir. 2013)).

## III.   DISCUSSION

Title VII prohibits "discrimination in employment based on several personal characteristics" including race, religion, national origin, and sex. *See E.E.O.C. v. Allstate Ins. Co.*, 778 F.3d 444, 448-49 (3d Cir. 2015) (citing, *inter alia*, 42 U.S.C. § 2000e-2(a)). A plaintiff may state a claim for employment discrimination by pleading facts to support that: (1) the plaintiff is a member of a protected class, (2) the plaintiff was qualified for the position she either held or sought, (3) the plaintiff suffered an adverse employment action, and (4) the circumstances of the adverse employment action give rise to an inference of discrimination. *See Johnson v. Keebler-Sunshine Biscuits, Inc.*, 214 F. App'x 239, 241 (3d Cir. 2007); *see also Connors v. Chrysler Fin. Corp.*, 160 F.3d 971, 973-74 (3d Cir. 1998).

Title VII also prohibits an employer from retaliating against an employee (a) for opposing any act made unlawful by the employment discrimination statutes, or (b) because she made a charge, testified, assisted, or participated in an investigation, proceeding, or hearing under the employment discrimination statutes. *See* 42 U.S.C. § 2000e-3; *Allstate Ins. Co.*, 778 F.3d at 449. To state a claim for retaliation, a plaintiff must allege that: (1) she engaged in conduct protected by Title VII; (2) the employer took adverse action against her; and (3) a causal link exists between her protected conduct and the employer's adverse action. *See Connelly v.*

*Lane Constr. Corp.*, 809 F.3d 780, 789 (3d Cir. 2016); *see also Larochelle v. Wilmac Corp.*, 769 F. App'x 57, 60 (3d Cir. 2019).  Not every complaint about employment entitles its author to protection from retaliation under Title VII.  *See Burlington N. & Santa Fe Ry.*, 548 U.S. 53, 68 (2006) (noting that Title VII does not "set forth a general civility code for the American workplace" (internal quotation marks omitted)).  Rather, only complaints about discrimination prohibited by Title VII—that is, discrimination on the basis of race, color, religion, sex, or national origin, 42 U.S.C. § 2000e–2—constitute "protected activity."  *Davis v. City of Newark*, 417 F. App'x 201, 202-03 (3d Cir. 2011) (*per curiam*) (citing *Barber v. CSX Distrib. Servs.*, 68 F.3d 694, 701-02 (3d Cir. 1995)).  "Thus, for a complaint to amount to 'protected activity,' it must implicate an employment practice made illegal by Title VII."  *Id*. at 203 (citing *Curay-Cramer v. Ursuline Acad. of Wilmington, Del., Inc.*, 450 F.3d 130, 135 (3d Cir. 2006)).  A general complaint about unfair treatment does not constitute protected activity; a plaintiff must show that she complained specifically about unlawful discrimination.  *Id*. (citing *Barber*, 68 F.3d at 702).

To plead a claim under Title VII, a plaintiff need not allege each element necessary to establish a *prima facie* case.  *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511 (2002) ("This Court has never indicated that the requirements for establishing a prima facie case under *McDonnell Douglas* also apply to the pleading standard that plaintiffs must satisfy in order to survive a motion to dismiss."), and *id.* at 515 ("[A]n employment discrimination plaintiff need not plead a prima facie case of discrimination.").  Rather, at the pleading stage, a plaintiff must allege facts that provide fair notice of her claims and demonstrate a plausible right to relief.  *See Twombly*, 550 U.S. at 555 (requiring plaintiffs to allege facts sufficient to "raise a right to relief above the speculative level").  Thus, to pass statutory screening under 28 U.S.C.

7

§ 1915(e)(2)(B)(ii), the complaint must "put forth allegations that raise a reasonable expectation that discovery will reveal evidence of the necessary element[s]." *Fowler*, 578 F.3d at 213; *Connelly,* 809 F.3d at 788-89 ("Instead of requiring a prima facie case, the post-*Twombly* pleading standard simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary elements." (cleaned up)).  Applying this framework to Dawkins's claims, she must plead sufficient factual allegations to raise a reasonable expectation that discovery will reveal evidence of race discrimination to support her claims based on retaliation, hostile work environment,[3] and termination.

Dawkins does not plead sufficient facts to support her claims.  Crucially, she does not allege any facts as to her membership in a protected class, which is fatal to her claims.  She checked the box indicating her claims are based on race discrimination, but she does not identify her race, let alone provide a causal link between her race and any adverse employment action, as she must in order to state a Title VII claim.  Instead, her allegations stem from an email her husband sent on December 22, 2023, regarding issues she had apparently discussed with him about the conditions and cleanliness at the warehouse.  (Compl. at 8.)  She references this email several times throughout the attachment to her Complaint, reiterating that it was "shortly after" the email was sent when "the racial discrimination, harassment, and retaliation began against [her]."  (*Id.*)  She pleads that, only after the email about cleanliness was sent, Dusty harassed her

---

[3] Dawkins references being "harassed," which is best construed as a hostile work environment claim.  To state a plausible hostile-work-environment claim under Title VII, a plaintiff must allege that: (1) she suffered intentional discrimination based on her being a part of a protected class, (2) the discrimination was severe or pervasive; (3) the discrimination had a detrimental influence on the plaintiff; (4) the discrimination would have had a detrimental influence on a reasonable person in similar circumstances; and (5) *respondeat-superior* liability exists.  *See Mandel v. M & Q Packaging Corp.*, 706 F.3d 157, 167 (3d Cir. 2013).

by giving her more work and her work performance was not being fairly represented.  (*Id*. at 9-11.)  When she was presented with the PIP, she claims she had not done anything wrong, and it was "nothing but retaliation from the email [her] husband sent."  (*Id*. at 9.)  She asserts she was ultimately terminated due to fabricated reasons—performance and violation of Quadratec's cell phone policy—when she was really terminated because her husband sent the email about her working conditions.  (*Id*. at 11-12.)

In short, Dawkins includes no facts to support a plausible inference that Quadratec's actions were motivated in any way by her race.  Rather, her allegations of harassment, retaliation, and termination stem solely from the email sent by her husband.  *See, e.g., Culler v. Sec'y of U.S. Veterans Affairs*, 507 F. App'x 246, 249 (3d Cir. 2012) (*per curiam*) (explaining that "[t]he discrimination must be 'because of' the employee's protected status or activity" (quoting *Andreoli v. Gates*, 482 F.3d 641, 644 (3d Cir. 2007))); *Sarullo v. U.S. Postal Serv.*, 352 F.3d 789, 798 (3d Cir. 2003) ("The central focus of the *prima facie* case is always whether the employer is treating some people less favorably than others because of their race, color, religion, sex, or national origin." cleaned up)).  Thus, her claims cannot proceed at this time.

## IV.   CONCLUSION

For the foregoing reasons, the Court will grant Dawkins leave to proceed *in forma pauperis* and dismiss her Complaint without prejudice for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).  The Court will permit Dawkins an opportunity to file an amended complaint if she is capable of correcting the defects the Court has identified in her claims.[4]  In

---

[4] In her amended complaint, Dawkins shall set forth in a narrative form all of the facts that support her discrimination claims and may not state a claim by relying solely on exhibits. *See Berkery v. Credit Collection Servs.*, No. 21-3809, 2021 WL 4060454, at *2 (E.D. Pa. Sept. 7, 2021) ("While a court may consider exhibits attached to a complaint, merely attaching exhibits is

addition, Dawkin's Motion to Appoint Counsel will be denied without prejudice because it is premature.[5] *See Tabron v. Grace*, 6 F.3d 147, 155 (3d Cir. 1993) (noting that before exercising discretion to appoint counsel, "the district court must consider as a threshold matter the merits of the plaintiff's claim").

An appropriate order follows, which contains additional instructions as to amendment.

**BY THE COURT:**


**/s/ Juan R. Sánchez**
**JUAN R. SÁNCHEZ, J.**

---

insufficient to meet the requirement that a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face.").

[5] Dawkins may renew her request *after* her amended complaint, if she files one, has been screened for merit.  If she chooses to file a renewed motion for the appointment of counsel, she should do so in accordance with the factors set forth by the United States Court of Appeals for the Third Circuit in *Tabron*.